IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

VICKSBURG HEALTHCARE,
LLC d/b/a MERIT HEALTH
RIVER REGION                                                                          PLAINTIFF

VS.                                         CIVIL ACTION NO. 3:23-cv-525-CWR-FKB

KPC PROMISE HOSPITAL
OF VICKSBURG, LLC;
KPC PROMISE HEALTHCARE,
LLC; and STRATEGIC GLOBAL
MANAGEMENT, INC.                                                                   DEFENDANTS

### ANSWER AND AFFIRMATIVE DEFENSES OF DEFENDANT
### KPC PROMISE HOSPITAL OF VICKSBURG, LLC TO COMPLAINT

COMES NOW Defendant, KPC Promise Hospital of Vicksburg, LLC ("KPC Promise"), and files the following Answer and Affirmative Defenses to the Complaint ("Complaint") filed by Plaintiff Vicksburg Healthcare, LLC d/b/a Merit Health River Region ("Merit Health"):

### AFFIRMATIVE DEFENSES

### FIRST DEFENSE

1.  The Complaint fails to state a claim upon which relief can be granted.

### SECOND DEFENSE

2.  Merit Health has breached its duty of good faith and fair dealing owed to KPC Promise.

### THIRD DEFENSE

3.  Merit Health has tortiously interfered with KPC Promise's business relations.

### FOURTH DEFENSE

4.  Merit Health's claims against KPC Promise are barred by the terms and conditions

04375118

of the lease between Merit and KPC Promise.

## FIFTH DEFENSE

5. Merit Health's claims against KPC Promise are barred by the defenses of contribution, indemnity, waiver and estoppel, release, payment, and accord and satisfaction.

## SIXTH DEFENSE

6. Merit Health's claims against KPC Promise are barred by the doctrine of unclean hands.

## SEVENTH DEFENSE

7. Merit Health's claims against KPC Promise must be dismissed because Merit Health is estopped by its own conduct and the conduct of other parties for whom KPC Promise is not responsible from bringing claims against KPC Promise in this action.

## EIGHTH DEFENSE

8. Merit Health's claims against KPC Promise are barred because Merit Health failed to give timely notice of the occurrence of events which allegedly gave rise to Merit Health's claims for damages.

## NINTH DEFENSE

9. Merit Health's claims are barred by Merit Health's failure to mitigate its alleged damages.

## TENTH DEFENSE

10. Merit Health has no cause of action for, and is not entitled to recovery of, any of its attorneys' fees from KPC Promise.

## ELEVENTH DEFENSE

11. As discovery has not been complete in this matter, KPC Promise affirmatively

pleads all defences available under Rule 12(b) and 8(c) of the Federal Rules of Civil Procedure.

## PARTIES

1. KPC Promise lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 1.

2. It is admitted that KPC Promise is a limited liability company incorporated under the laws of the State of California and is qualified to do business in the State of Mississippi. It is further admitted that it may be served with process through its agent, Corporation Service Company at 109 Executive Drive, Suite 3, Madison, Mississippi 39110. The remaining allegations in Paragraph 2 are denied.

3. KPC Promise denies that KPC Healthcare operates as an alter ego and/or single business enterprise with KPC Promise and SGM. The remaining allegations of Paragraph 3 are not directed to KPC Promise and therefore do not require a response from KPC Promise. To the extent the allegations are construed as to require a response from KPC Promise, those allegations as to KPC Promise are denied.

4. KPC Promise denies that SGM operates as an alter ego of and/or single business enterprise with KPC Promise and KPC Healthcare. The remaining allegations of Paragraph 4 are not directed to KPC Promise and therefore do not require a response from KPC Promise. To the extent the allegations are construed as to require a response from KPC Promise, those allegations as to KPC Promise are denied.

## JURISDICTION AND VENUE

5. KPC Promise admits only that this Court has jurisdiction over this matter under 28 U.S.C. § 1332.

6. Admitted.

**FACTUAL BACKGROUND**

7. KPC Promise lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 7.

8. KPC Promise admits that Promise Hospital of Vicksburg, Inc. entered into a written Lease Agreement. The terms of the Lease Agreement speak for themselves. To the extent the allegations in Paragraph 8 conflict with the terms of the Lease Agreement, those allegations are denied.

9. The terms of the Lease Agreement speak for themselves. To the extent the allegations in Paragraph 9 conflict with the terms of the Lease Agreement, those allegations are denied.

10. The terms of the Services Agreement speak for themselves. To the extent the allegations in Paragraph 10 conflict with the terms of the Services Agreement, those allegations are denied.

11. The terms of the Services Agreement speak for themselves. To the extent the allegations in Paragraph 11 conflict with the terms of the Services Agreement, those allegations are denied.

12. KPC Promise admits that the Lease Agreement was amended. The Amended Lease Agreement speaks for itself. To the extent the allegations in Paragraph 12 conflict with the Amended Lease Agreement, those allegations are denied.

13. The allegations in Paragraph 13 are not directed to KPC Promise and do not require a response from KPC Promise. To the extent the allegations are construed as to require a response from KPC Promise, those allegations as to KPC Promise are denied.

14. The allegations in Paragraph 14 are not directed to KPC Promise and do not require

a response from KPC Promise. To the extent the allegations are construed as to require a response from KPC Promise, those allegations as to KPC Promise are denied.

15. The allegations in Paragraph 15 are not directed to KPC Promise and do not require a response from KPC Promise. To the extent the allegations are construed as to require a response from KPC Promise, those allegations as to KPC Promise are denied.

16. The allegations in Paragraph 16 are not directed to KPC Promise and do not require a response from KPC Promise. To the extent the allegations are construed as to require a response from KPC Promise, those allegations as to KPC Promise are denied.

17. The allegations in Paragraph 17 are not directed to KPC Promise and do not require a response from KPC Promise. To the extent the allegations are construed as to require a response from KPC Promise, those allegations as to KPC Promise are denied.

18. The allegations in Paragraph 18 are not directed to KPC Promise and do not require a response from KPC Promise. To the extent the allegations are construed as to require a response from KPC Promise, those allegations as to KPC Promise are denied.

19. The allegations in Paragraph 19 are not directed to KPC Promise and do not require a response from KPC Promise. To the extent the allegations are construed as to require a response from KPC Promise, those allegations as to KPC Promise are denied.

20. Denied.

21. The allegations in Paragraph 21 are not directed to KPC Promise and do not require a response from KPC Promise. To the extent the allegations are construed as to require a response from KPC Promise, those allegations as to KPC Promise are denied.

22. KPC Promise admits that it filed Articles of Organization on March 15, 2019.

23. Denied.

24. Admitted.

25. The allegation in Paragraph 25 are not directed to KPC Promise and do not require a response from KPC Promise. To the extent the allegations are construed as to require a response from KPC Promise, those allegations as to KPC Promise are denied.

26. KPC Promise admits that on or about March 15, 2020 the Lease Agreement was amended. The terms of the Amended Lease Agreement speak for themselves. To the extent the allegations in Paragraph 26 conflict with the terms of the Amended Lease Agreement, those allegations are denied.

27. KPC Promise admits that on or about March 30, 2020 the Lease Agreement was amended. The terms of the Amended Lease Agreement speak for themselves. To the extent the allegations in Paragraph 27 conflict with the terms of the Amended Lease Agreement, those allegations are denied.

28. The Lease Agreement speaks for itself. To the extent the allegations in Paragraph 28 conflict with the terms of the Lease Agreement, those allegations are denied.

29. KPC Promise admits only that it occupied the premises for a period of time after April 23, 2023.

30. Denied as worded.

31. KPC Promise admits only that it received the letter attached as Exhibit J to the Complaint.

32. KPC Promise admits that it did not pay $363,347.60 for May and June 2023. Any further allegations in Paragraph 32 are denied.

33. Denied as worded.

34. Denied as worded.

35. KPC Promise lacks knowledge as to what Merit Health received. The checks attached as Exhibit K to the Complaint speak for themselves. To the extent the allegations in Paragraph 35 conflict with those checks, those allegations are denied.

36. KPC Promise lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 36.

37. KPC Promise lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 37.

38. Denied.

39. Denied.

40. The letter speaks for itself. To the extent the allegations in Paragraph 40 conflict with the terms of the letter, those allegations are denied.

41. Admitted.

42. Denied.

## COUNT ONE

### Breach of Contract

43. KPC Promise incorporates by reference its responses to the allegations in Paragraphs 1-42.

44. Denied.

45. The allegations in Paragraph 45 are issues of law which do not require a response from KPC Promise.

46. The allegations in Paragraph 46 are issues of law which do not require a response from KPC Promise.

47. The allegations in Paragraph 47 are issues of law which do not require a response

from KPC Promise.

48. The terms of the Lease Agreement speak for themselves. To the extent the allegations in Paragraph 48 conflict with the terms of the Lease Agreement, those allegations are denied.

49. KPC Promise lacks knowledge or information sufficient to form a belief as to the allegations in Paragraph 49.

50. Denied.

51. The terms of the Lease Agreement speak for themselves. To the extent the allegations in Paragraph 51 conflict with the terms of the Lease Agreement, those allegations are denied.

52. The terms of the Lease Agreement speak for themselves. To the extent the allegations in Paragraph 52 conflict with the terms of the Lease Agreement, those allegations are denied.

53. Denied.

54. Denied.

55. Denied.

56. Denied.

57. Denied.

58. Denied.

59. Denied.

60. With regard to the first sentence in Paragraph 60, the terms of the Lease Agreement speak for themselves. To the extent the allegations in Paragraph 60 conflict with the terms of the Lease Agreement, those allegations are denied. The remaining allegations in Paragraph 60 are

denied.

## COUNT TWO

### Alter Ego and Single Business Enterprise Liability

61. KPC Promise incorporates by reference its responses to the allegations in Paragraphs 1-60.

62. Denied.

63. Denied.

64. The allegations in Paragraph 64 are not directed against KPC Promise and therefore do not require a response from KPC Promise. To the extent the allegations are construed as to require a response from KPC Promise, those allegations as to KPC Promise are denied.

65. The allegations in Paragraph 65 are not directed against KPC Promise and therefore do not require a response from KPC Promise. To the extent the allegations are construed as to require a response from KPC Promise, those allegations as to KPC Promise are denied.

66. Denied.

67. Denied.

68. Admitted.

69. Denied.

70. Denied.

71. Denied.

72. Denied.

73. Denied.

74. Denied.

75. Denied as worded.

76. Denied as worded.

77. Denied.

78. Denied.

79. Denied.

80. Denied.

81. Denied.

82. Denied.

83. Denied.

84. Denied.

85. The allegations in Paragraph 85 are not directed against KPC Promise and therefore do not require a response from KPC Promise. To the extent the allegations are construed as to require a response from KPC Promise, those allegations as to KPC Promise are denied.

86. Denied.

87. Denied.

88. Denied.

89. Denied.

90. Denied.

91. Denied.

92. Denied.

**PRAYER FOR RELIEF**

KPC Promise denies the allegations in the Prayer for Relief including the allegations in sections a-g and denies that Merit Health is entitled to any relief in this action.

AND NOW, having fully answered each and every allegation of the Complaint filed

against it, KPC Promise respectfully requests that this Court dismiss the Merit Health's claims against KPC Promise with prejudice, taxing all costs against the Merit Health. KPC Promise also prays for such other and further relief as this Court deems just and proper.

## COUNTERCLAIM BY KPC PROMISE HOSPITAL OF VICKSBURG, LLC

KPC Promise Hospital of Vicksburg, LLC ("KPC Promise") comes now, by and through undersigned counsel, and files the below Counterclaim against Vicksburg Healthcare, LLC d/b/a Merit Health River Region, Inc. ("Merit Health"). In support of the same, KPC Promise states as follows:

1. KPC Promise is a long-term acute care hospital ("LTACH"). LTACHs provide care to patients with serious medical conditions who are in need of an extended, on-going hospitalization beyond that provided at an acute care hospital.

2. Merit Health is a hospital operating in Vicksburg, Mississippi which participates in Medicare and Medicaid.

3. As a condition for participating in Medicare, Merit Health is required to meet certain specified requirements, including, but not limited to, effective discharging as set forth in 42 C.F.R. § 482.43.

4. 42 C.F.R. § 482.43 requires Merit Health to "have an effective discharge planning process that focuses on the patient's goals and treatment preferences and includes the patient and his or her caregivers/support person(s) as active partners in the discharge planning for post-discharge care." *See* 42 C.F.R. § 482.43.

5. Under 42 C.F.R. § 482.43, for patients being transferred from Merit Health to an LTACH, Merit Health is required, among other things, to include in the patient's discharge plan a list of LTACHs that are available to the patient which participate in the Medicare program and

which serve the geographic area in which the patient resides or in the geographic area requested by the patient. *See* 42 C.F.R. § 482.43.

6.    This regulation also requires Merit Health to inform the patient or the patient's representative of their freedom to choose among LTACHs which participate in the Medicare program and, when possible, respect the patient's or the patient's representative's goals of care and treatment preferences, as well as other preferences they express. Merit Health is prohibited from specifying or otherwise limiting the qualified LTACHs that are available to the patient.

7.    Through 2018, Promise Hospital of Vicksburg, Inc. ("PHV"), a subsidiary of Promise Healthcare, Inc., operated as an LTACH at Merit Health.

8.    On or about November 5, 2018, Promise Healthcare, Inc. along with its nine subsidiary hospital entities, including Promise Hospital of Vicksburg, Inc., filed voluntary petitions for relief under chapter 11 of title 11, United States Code (the "Bankruptcy Code") with the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court"), *In re Promise Healthcare Group, LLC, et al.*, Civil Action No. 18-12491 (CSS).

9.    Pursuant to a certain Asset Purchase Agreement dated February 26, 2019 by and between Promise Healthcare, Inc. and Strategic Global Management, Inc., and by way of subsequent assignments, on or about June 14, 2019, KPC Promise became the successor in interest of certain agreements between PHV and Merit Health including, but not limited to, the Lease Agreement between PHV and Merit Health. *See* [ECF Doc. 1-7].

10.    KPC Promise began operations within Merit Health. During the leasehold term, KPC Promise was the only LTACH within 50 miles of Merit Health.

11. KPC Promise and Merit Health executed two amendments to the Lease Agreement which effectively increased the amount a square footage KPC Promise leased from Merit Health. *See* [ECF Docs. 1-8 and 1-9].

12. The Lease Agreement incorporated a certain Amended and Restated Purchased Services (the "Services Agreement"). Pursuant to paragraph 2.2 of the parties' Services Agreement, Merit Health agreed, among other things, to "provide adequate, appropriately qualified professionals and technical personnel and other assistants to perform duties necessary to provide the Purchased Services to LTCH" including, but not limited to, surgery and minor surgical procedure services. *See* [ECF Doc. 1-5] at pp. 2, 11.

13. For a period of time, Merit Health and KPC Promise enjoyed a mutually beneficial and harmonious relationship. Merit Health identified KPC Promise to its patients as an LTACH participating in Medicare and operating within the geographic region, and, in turn, KPC Promise provided Merit Health's patients with high quality, ongoing, long-term acute care. Merit Health also performed the Purchased Services, including the general surgery services, requested by KPC Promise, pursuant to the parties' Amended and Restated Purchased Services Agreement.

14. In fact, throughout the Public Health Emergency related to COVID-19 as declared by the Secretary of the Department of Health and Human Services, KPC Promise assisted Merit Health in its attempt to house and treat patients. During this time, KPC Promise accepted the overflow of patients that Merit Health could not handle. But, as a result, in order to retain and/or attract properly trained staff, KPC Promise was forced to significantly increase its staff compensation to care for the patients that Merit was not equipped to handle.

15. LTACHs located within acute care hospitals rely very heavily on patient referrals from their host hospitals. Merit Health knew that absent referrals from Merit Health, KPC Promise would not be able to survive.

16. Despite the legal requirements of 42 § CFR 482.43, and despite KPC Promise being the only LTACH within 50 miles of Merit Health, on information and belief, Merit Health began refusing to identify KPC Promise as an LTACH that was available to its patients despite KPC Promise serving the patient's geographic area. On information and belief, Merit Health also began refusing to advise its patients of their freedom to select KPC Promise as an option and otherwise improperly limiting its patients' selection of LTACHs so as to exclude KPC Promise.

17. Further, on information and belief, Merit Health instructed its staff not to refer any patients to KPC Promise with the intent of shutting KPC Promise down.

18. Additionally, and without justification and in breach of the Services Agreement, Merit Health also began refusing to perform certain Purchased Services including, but not limited, general surgery services requested by KPC Promise.

19. As a result of Merit Health's unreasonable, unlawful, and unjustifiable refusal to refer patients to KPC Promise, Merit Health's plan came to fruition.

20. On May 9, 2023, and without regard for the safety or placement of the patients at KPC Promise, Merit Health demanded that KPC Promise and its patients vacate the leased premises within 30 days.

## COUNT I
## TORTIOUS INTERFERENCE WITH BUSINESS RELATIONS

21. KPC Promise incorporates herein by reference all allegations set forth above.

22. Merit Heath intentionally and wilfully, and in direct violation of 42 CFR § 482.43, refused to identify KPC Promise as an available LTACH in its patients' discharge list.

23. Merit Health intentionally and wilfully, and in direct violation of 42 CFR § 482.43, instructed its staff not to refer any patients to KPC Promise.

24. Merit Health's actions were calculated to cause damage to KPC Promise in its lawful business.

25. Merit Health's actions were done with the unlawful purpose of causing damage and loss without right or justifiable cause.

26. As a result of Merit Health's actions, KPC Promise did in fact suffer damage.

27. Merit Health's unlawful and unjustifiable actions constitute tortious interference with KPC Promise's business relations.

28. Accordingly, KPC Promise requests that the Court enter judgment in favor of KPC Promise and against the Merit Health making the Merit Health liable for: (1) an award of compensatory damages in an amount not less than that proven at trial; (2) an award of attorneys' fees as permitted by the Lease Agreement and/or the law; (3) an award of pre-judgment and post-judgment interest in amounts allowed by law; and (4) such other relief the Court may deem just and proper.

## COUNT II
## BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING

29. KPC Promise incorporates herein by reference all allegations set forth above.

30. The Lease Agreement between Merit Health and KPC Promise contains an implied covenant of good faith and fair dealing.

31. The duty of good faith and fair dealing requires that Merit Health not take actions which wrongfully harm KPC Promise's rights to receive its benefits under the Lease Agreement.

32. Merit Health acted in bad faith by wrongfully instructing its staff not to refer patients to KPC Promise, by failing to identify KPC Promise as an available LTACH in its patients' discharge list; and by otherwise violating 42 CFR § 482.43.

33. Merit Health's actions violate the standards of decency, fairness, and/or reasonableness.

34. As a result of Merit Health's bad faith, Merit Health has breached the covenant of good faith and fair dealing owed to KPC Promise and has caused actual damage to KPC Promise.

35. Accordingly, KPC Promise requests that the Court enter judgment in favor of KPC Promise and against the Merit Health making the Merit Health liable for: (1) an award of compensatory damages in an amount not less than that proven at trial; (2) an award of attorneys' fees as permitted by the Lease Agreement and/or the law; (3) an award of pre-judgment and post-judgment interest in amounts allowed by law; and (4) such other relief the Court may deem just and proper.

## COUNT III
## BREACH OF CONTRACT

36. KPC Promise incorporates herein by reference all allegations set forth above.

37. KPC Promise has performed all of its duties and obligations under the Services Agreement.

38. Despite repeated demands by KPC Promise, Merit Health failed to perform certain services required of it under the Services Agreement, including, but not limited to, general surgery services.

39. By failing to provide the agreed upon services to KPC Promise as set forth in the Services Agreement, Merit Health breached the terms of the Services Agreement.

40. Merit Health's breach of the Services Agreement has damaged KPC Promise in the amount of not less than that amount proven at trial.

41. Accordingly, KPC Promise requests that the Court enter judgment in favor of KPC Promise and against the Merit Health making Merit Health liable for: (1) an award of compensatory damages in an amount not less than that proven at trial; (2) an award of attorneys' fees as permitted by the Lease Agreement and/or the law; (3) an award of pre-judgment and post-judgment interest in amounts allowed by law; and (4) such other relief the Court may deem just and proper.

WHEREFORE PREMISES CONSIDERED, KPC Promise respectfully requests that the Court enter judgment in KPC Promises' favor and against Merit Health as follows:

A. That judgment be entered against Merit Health and in favor of KPC Promise for compensatory damages in an amount not less than that proven at trial;

B. That judgment be entered against Merit Health and in favor of KPC Promise for attorneys' fees as permitted by the Lease Agreement and/or the law;

B. That judgment be entered against Merit Health and in favor of KPC Promise for an award of any pre-judgment and post-judgment interest allowed by law; and

C. That judgment be entered against Merit Health and in favor of KPC Promise for all other and further relief which the Court may deem just and proper.

DATED: September 29, 2023.

**KPC PROMISE HOSPITAL OF VICKSBURG, LLC**

By: */s/ John E. Wade, Jr.*
John E. Wade, Jr.
One of Its Attorneys

04375118                                         17

**OF COUNSEL:**

John E. Wade, MSB No. 6850
jwade@brunini.com
Alston F. Ludwig, MSB No. 103241
aludwig@brunini.com
BRUNINI, GRANTHAM, GROWER & HEWES, PLLC
190 East Capitol Street, Suite 100
Jackson, Mississippi  39201
Post Office Drawer 119 (39205)
Telephone:  (601) 948-3101
Telecopier:  (601) 960-6902

## CERTIFICATE OF SERVICE

I hereby certify that I have this day caused to be electronically filed the foregoing pleading or other paper with the Clerk of the Court using the ECF system which sent notification of such filing all counsel of record.

DATED:  September 29, 2023.

                                            */s/ John E. Wade, Jr.*
                                              John E. Wade, Jr.